UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELO R. BOMASUTO,

                                              **No. 05-CV-6490 (VEB)**
                                              **DECISION AND ORDER**

                     Petitioner,

   -vs-

KENNETH S. PERLMAN, Superintendent,
M.S.C.F.,
                 Respondent.
_____

**I.      Introduction**

*Pro se* petitioner Angelo R. Bomasuto ("Bomasuto" or "petitioner") has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges the constitutionality of his state custody pursuant to a judgment of conviction, following a guilty plea, entered on May 13, 2002, in Chautauqua County Court, New York State Supreme Court, convicting him of Burglary in the Second Degree. Bomasuto was adjudicated and sentenced as a second felony offender to a determinate term of 8 years and 5 years post-release supervision on the burglary conviction, and an indeterminate term of from 1 to 3 years imprisonment on the larceny conviction. These sentences were sent to run concurrently. Based upon the NYSDOCS inmate locator service, it appears that Bomasuto's aggregate minimum sentence was 6 years, 10 months, and 8 days, and his aggregate maximum was 8 years. Bomasuto's first parole hearing apparently was on May 28, 2008. He was received at Livingston Correctional Facility on July 1, 2008, and had another parole hearing ("parole violator assessed expiration") in March 2009. This implies that Bomasuto was released in 2008 and returned on a parole violation, and subsequently released on May 29,

2009, under the custody of the parole division. Bomasuto is currently serving his term of post-release supervision. The maximum expiration date for this post-release supervision term is May 28, 2014, according to the New York State Department of Corrections Services website.

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons that follow, the petition is dismissed.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Plea and Sentencing

The underlying conviction stems from allegations that on the evening of July 6, 2001, in the Village of Fredonia, petitioner entered the home of his cousins, Peter and Ann Eckman, while they were away, and stole a handgun, items of jewelry, and a milk jug full of coins. The items stolen were valued at over $15,000. Bomasuto exchanged the stolen property for drugs to support his addition. He later admitted his wrongdoing to the victims and signed a written confession.

On September 17, 2001, Bomasuto was indicted in Chautauqua County Court on one count each of second degree burglary larceny (New York Penal Law ("P. L.") § 140.25) and third degree grand (P.L. § 155.35)).

During arraignment, the prosecutor advised the trial court that Bomasuto had additional criminal charges outstanding against him, including a pending burglary charge in Erie County. The trial court was also advised of petitioner's "several out-of-state [prior] felony convictions."

At a pre-trial conference, the Chautauqua County prosecutor offered petitioner the opportunity to plead guilty in full satisfaction of the indictment and to be sentenced, as a second felony offender, in return for a sentence promise by the trial court that petitioner would receive a determinate sentence of 5 years imprisonment and 5 years post-release supervision on the

burglary charge, and 1 to 3 years imprisonment on the grand larceny charge. These sentences were to run concurrently with each other and concurrently with a sentence anticipated to be imposed in Erie County Court on an unrelated charge of second-degree burglary.[1]

On December 10, 2001, Bomasuto appeared with trial counsel before Judge Ward in Chautauqua County Court and entered a guilty plea to the indictment pursuant to the above-described terms. During the colloquy with the trial judge, Bomasuto acknowledged that he had discussed the terms of the plea with his counsel. He agreed that he was waiving his right to a jury trial and to not incriminate himself. Bomasuto admitted that he knowingly entered his cousins' residence with the intent to commit a crime, and that he stole property valued at over $3,000, including a handgun, jewelry and coins.

At the sentencing hearing on February 19, 2002, the trial court permitted the crime victims to speak. One victim, Mr. Eckman, stated that the family continued to feel the effects of the crime and that "[i]t's been a very difficult time," and explained that his family was concerned because petitioner had admitted to owning two handguns, petitioner was Mrs. Eckman's cousin, and that the family could have returned home while petitioner was burglarizing their home, and the crime could have turned violent. The victim asked the court to consider having petitioner's sentences on on the Chautauqua County convictions run consecutively to the sentences to be imposed with regard to the unrelated Erie County crimes.

In response to the victim's comments, the trial judge observed that his own home had been burglarized while his wife was home and shared the following:

The same thing happened to my home when my wife was home and I wasn't. I

---

[1] The trial judge in Erie County imposed a determinate sentence of 5 years.

-3-

> know to some extent what you are going through. It never leaves you, the sense of vulnerability.
> People who commit these crimes don't realize the extent of the damage they do to the victims. Even supposedly nonviolent crimes where no is injured, you are injured. You are emotionally injured.

Exhibit O, p. 5. The judge then stated:

> [Petitioner] is scheduled for sentencing today. And the victims obviously have concern about the sentence that was agreed upon and are not in agreement with it, which is not what I was led to believe at the time of the plea, which is not a reflection on the district attorney at all. But in light of their comments, and in light of their request, I need additional time to consider the sentence. I know, [petitioner's counsel], you would ask me to enforce the agreement that was given at the time, made at the time and give him the five years concurrent.

Exhibit O, p. 6. Petitioner's counsel urged the trial court to impose the promised sentence, and argued that Bomasuto had detrimentally relied upon the Chautauqua County Court's sentence promise, asserting that the decision to accept the Erie County plea bargain "was in some part at least" based on the plea agreement discussed in the instant matter. Exhibit O, p. 6. The court adjourned the matter to April 15, 2002, "at which time I will decide whether to give him the five year determinate which was agreed upon or permit him to withdraw his plea." Exhibit O, p. 7.

Respondent indicates that a pre-sentencing conference was held on April 15, 2002; although a "Court Worksheet" was completed by the judge's deputy summarizing what occurred, the proceedings unfortunately were not transcribed or made a part of the appellate record. The Court Worksheet reflects that the trial judge, the prosecutor and petitioner's counsel attended the conference, but there is no indication as to whether petitioner was present. *See* Respondent's Exhibit J. The Court Worksheet states that the trial judge explained that Bomasuto "may withdraw plea if ct. [sic] can't live up to original agreement." *Id.* According to the Court Worksheet, trial counsel indicated that "defendant will not withdraw plea." *Id.*

About a month later, on May 13, 2002, petitioner and his counsel appeared before the trial judge for sentencing, at which time he informed petitioner that the prosecutor had requested that petitioner be adjudicated as a second felony offender on the basis of a 1996 felony conviction from South Carolina. Respondent's Exhibit P at 2. Petitioner affirmed that he did not wish to deny or controvert the felony offender statement. *Id.* The trial judge proceeded to explain to petitioner that because he was unwilling to impose the originally agreed-upon sentence, he would permit petitioner the opportunity to withdraw his guilty pleas. *Id.* at 2-3. When the court specifically asked Bomasuto whether he wished to withdraw his guilty plea, petitioner stated "No, sir." *Id.* at 3. The trial judge explained, "You understand that you will be receiving a sentence greater than what you bargained for when you pled guilty, so you do have a right to have your plea withdrawn." *Id.* Petitioner affirmed that he did not wish to withdraw his guilty plea. *Id.*

At that time, trial counsel argued that the trial judge should impose the sentence originally promised under the guilty plea (5 year determinate, concurrent with the to be sentence imposed in the Erie County) on the basis that the crime victims essentially waived their right to express dissatisfaction since they did not do so prior to petitioner's entry of the plea. Exhibit P at 4. Trial counsel argued that petitioner had relied, to his ultimate detriment, on the original plea agreement in pleading guilty to the Erie County charges. *Id.* at 5. In response, the trial judge responded that although he had considered the victim's concerns in determining a proper sentence, he was the "ultimate decider" of what sentence would be imposed. *Id.* Petitioner then addressed the court, and urged that the trial judge had broken his sentencing promise to him, while he (petitioner) had upheld the conditions on his end of the agreement by pleading guilty to the charges in the instant

matter, and to the Erie County charges, in exchange for the agreed-upon 5-year prison sentence. *Id.* 6. Explaining that he "problems" had from drug addiction, which "drove him" to theft, he requested that the trial court sentence him to a determinate, 5-year prison term, to run concurrently with the Erie County sentence. *Id.* at 7.

The trial judge then sentenced petitioner to a determinate, 8-year term of imprisonment, to run concurrently with the Erie County sentence, and 5 years of post-release supervision on the second-degree burglary charge. *Id.* Thus, petitioner's determinate sentence on the Chautauqua County convictions was 3 years longer than the 5-year term he had been promised when he had pleaded guilty in 2001.[2] The 5 years of post-release supervision had always been a part of the sentence promise. With respect to the sentence on the third-degree grand larceny charge, the trial judge sentenced petitioner as he had been originally promised–to an indeterminate term of imprisonment of from 1 to 3 years, to run concurrently with all of the sentences. *Id.* at 8.

### B. Post-Conviction Proceedings

#### 1. Direct Appeal

Represented by new appointed counsel on appeal, petitioner argued that the "enhanced" sentence was not warranted because no new, post-plea circumstance permitted deviation from the original agreement; the court's enhancement of the sentence was improperly based on the

---

[2] I cannot condone the manner in which the state court treated petitioner's plea bargain and sentencing promise. In my opinion, the trial judge rejected what was a contractual agreement he had previously approved, without notice and without recusing himself, even though he acknowledged that his refusal to carry through on the sentencing promise was influenced in part by his family's personal experience with being victims of a burglary and the severe emotional toll it took on him and his family. The alternative offered by the judge–to withdraw the guilty plea–was meaningless, as it was extremely unlikely that petitioner's conviction-by-guilty-plea in the other county could be ~~undone~~ withdrawn or repudiated. Petitioner's willingness to proceed with his sentence was understandable in the circumstances.

victim's request. He argued that the victims were represented by the prosecutor, who negotiated the plea, and therefore they were bound by the agreement. Petitioner also argued that the trial court was bound by the sentencing promise because petitioner detrimentally relied on the Chautauqua County plea promise and agreement when he pled guilty to the unrelated, Erie County charges. Finally, petitioner claimed that the trial judge's remarks regarding how a burglary personally affected his family exhibited impartiality and bias against petitioner, and impermissibly affected his decision to impose a lengthier sentence than had been promised. The prosecutor contended that petitioner was not entitled to specific performance of the plea arrangement, and that because the trial court learned post-plea of the victims' disagreement with the sentence, the trial court properly declined to impose the originally agreed-upon sentence. The prosecutor pointed out that although he had been offered opportunity to withdraw his guilty plea when the trial court realized that it would not impose the original sentence, petitioner refused to do so and elected to adhere to his plea, knowing that he was going to get a sentence greater than 5 years. The prosecutor argued that petitioner had not detrimentally relied on any promises by the sentencing court, and that the Chautauqua County plea was not conditioned on petitioner's guilty plea to the Erie County charges.

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. *People v. Bomasuto*, 6 A.D.3d 1148, 775 N.Y.S.2d 660 (4th Dept.), *lv. den.*, 3 N.Y.3d 637, 782 N.Y.S.2d 408 (N.Y. 2003). The Appellate Division held that the Court properly advised petitioner that it was unable to keep its commitment to impose the 5-year sentence in light of the petitioner's cousin's victim impact statement and the remarks made at sentencing by the petitioner's cousin's husband. 6 A.D.2d

1148. The Appellate Division held as follows:

> Contrary to the contention of [petitioner], the fact that he pleaded guilty in Erie County to unrelated charges did not place him in a "'no return' position" with respect to the plea herein. The plea herein was not conditioned upon the proceedings in Erie County, nor did [petitioner] perform any services for the prosecution in exchange for his plea. Thus, [petitioner] would have been returned to his preplea status had he elected to withdraw his plea.

*Id.* In a certificate dated June 21, 2004, a judge of the Court of Appeals denied petitioner's leave application. *People v. Bomasuto*, 3 N.Y.3d 637, 782 N.Y.S.2d 408 (N.Y. 2004).

### 2. Collateral State-Court Motions

On June 16, 2003, petitioner filed a motion seeking disclosure of his pre-sentence investigation report. According to the petition, petitioner argued: (1) he believed that the officer who prepared the report conducted an inadequate investigation; (2) the court was "not adequately informed of the person it was sentencing"; (3) the court received in the pre-sentence report only the "Police and Prosecutions [sic] view" of petitioner; (4) petitioner was deprived of effective assistance of counsel prior to and during the sentencing proceeding because counsel denied him access to the pre-sentence report.

On June 19, 2003, the trial court denied petitioner's request, issuing a standing order which stated "Pre-sentence reports are not public records. They may not be disclosed except upon order of the court as provided for in Criminal Procedure Law Section 390.50(1)" (Exhibit F). On September 15, 2004, petitioner's motion to the Appellate Division, Fourth Department for "disclosure of the pre-sentence investigation report relating to the appeal" from petitioner's conviction was denied on the ground that any such application must be made to the County Court, and in any event, no direct appeal lies from an order denying a motion requesting

disclosure of a pre-sentence investigation report." Exhibit G. On July 12, 2004, petitioner filed with the Chautauqua County Court a "Motion for Pre Sentence Report Pursuant to C.P.L. § 390.50." He argued (1) that he had a right to obtain a copy of the pre-sentence investigation report for use on appeal; (2) he wished to examine thereport for any mistakes or errors; (3) factual "misinformation" in the report could adversely affect the outcome of his appeal and his experiences with the New York State Division of Parole and Department of Corrections; and (4) he wished to obtain the information that prison officials would use to determine his eligibility for prison programs. The trial judge denied petitioner's motion on July 16, 2004, issuing the same standing order as previously issued. *See* Resp't Ex. H.

### 3. The Habeas Proceeding

In support of his petition for a writ of habeas corpus, Bomasuto raises the following grounds for relief: (a) his guilty plea was unconstitutional, because the trial court breached the plea agreement by not refusing to impose the originally promised sentence of 5 years, and that detrimentally relied upon the trial court's sentencing promise in deciding to plead guilty to the Erie County charges, characterized by petitioner "as part of the [Chautauqua] plea agreement"; (b) the prosecutor failed to provide petitioner a copy of the pre-sentence investigation report and the documents adjudicating petitioner a second felony offender, and the adjudication was invalid because the South Carolina felony would not be a felony crime in New York State; (c) petitioner did not undergo a competency examination prior to pleading guilty; (d) because the sentencing court was biased, petitioner's due process rights were violated; (e) prior to pleading guilty, petitioner was deprived of the effective assistance of counsel; (f) petitioner was deprived of the effective assistance of counsel during plea proceedings and sentencing; and (g) petitioner was

deprived of the effective assistance of appellate counsel. *See* Petition at 7-8, Resp't Ex. K and attachments.

Respondent has asserted that all of Bomasuto's claims are unexhausted or must be "deemed" exhausted but procedurally defaulted. Respondent further asserts that, in any event, all of the claims are entirely without merit.

**III.    Jurisdiction – The "In Custody" Requirement**

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3) (emphasis in original) and citing 28 U.S.C. § 2254(a)). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng*, 490 U.S. at 490-91 (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)).

Here, Bomasuto has been released from prison. However, at the time he filed his habeas petition, he was incarcerated. Therefore, he fulfills the "in custody" requirement of 28 U.S.C. § 2254. Moreover, Bomasuto remains under a term of post-release supervision. "Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be custody" for purposes of a habeas petition brought under 28 U.S.C. § 2254. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (citing *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (holding that parole satisfies the "in custody" requirement of habeas petitions; "the custody and control of the Parole Board involves significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public

generally"); *Peck v. United States*, 73 F.3d 1220, 1224 n. 5 (2d Cir.1995) ("[Defendant] has completed his prison term since his petition was denied . . . and is presently serving a three-year term of supervised release. Although he is no longer in prison, a term of supervised release, which carries with it the possibility of revocation and additional jail time, satisfies the 'in custody' requirement of § 2255") (citations omitted).

## IV. Mootness and Justiciability

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy." *E.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *accord*, *e.g.*, *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir.1999). "Thus, where the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision." *Mercurris*, 192 F.3d at 293 (citing *Spencer*, 523 U.S. at 7). "[I]f an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case." *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (internal quotation marks and citations omitted).

"A criminal case does not necessarily become moot when the convict finishes serving the sentence. Instead, the case will remain a live case or controversy if there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction." *Mercurris*, 192 F.3d at 293 (quoting *Spencer*, 523 U.S. at 7). Where the defendant challenges the criminal

conviction itself, the Supreme Court "has been willing to presume the existence of collateral consequences sufficient to satisfy the case or controversy requirement; or in a practice that it views as 'effectively the same,' the Court has been willing 'to count collateral consequences that are remote and unlikely to occur.'" *United States v. Probber*, 170 F.3d 345, 348 (2d Cir.1999) (emphasis in original) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences was articulated in *Sibron v. New York*, 392 U.S. 40, 54-56 (1968), where the Supreme Court noted that "most criminal convictions do in fact entail adverse collateral legal consequences," such as deportation, inability to become a citizen, the use of the conviction impeachment evidence in future criminal trials, being barred from holding certain offices, voting in state elections, serving as a juror, and having the conviction used to enhance future prison sentences. "After *Sibron*, a habeas petition challenging a *criminal conviction* is rendered moot by a release from imprisonment 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (quoting *Sibron*, 392 U.S. at 57) (emphasis supplied).

A mootness issue is presented by his release from custody during the pending of the petition because the only habeas remedy he apparently seeks from this Court is specific performance of the trial court's original sentence promise of 5 years, rather than withdrawal of the plea. Petitioner does not appear to be challenging the criminal conviction itself; he has not sought and does not seek withdrawal of the plea. Because petitioner is now challenging the duration of an already-served prison sentence, the question becomes whether this Court is capable of granting him any effective relief. *See Lane v. Williams*, 455 U.S. 624, 631-33 (1982). *See Lane v. Williams*, 455 U.S. 624 (1982). I note that in Bomasuto has raised the same claim he

raised on direct appeal (that the guilty plea was unconstitutional because the trial court breached its sentencing promise, upon which Bomasuto had detrimentally relied), along with a number of other unexhausted claims not raised on direct appeal or in any collateral proceeding (e.g., ineffective assistance of trial counsel before and during the plea proceeding, and ineffective assistance of appellate counsel). Looking at the history of Bomasuto's case, I see that on direct appeal, when Bomasuto's appellate counsel raised the claim relating to the trial court's breach of the sentence promise, the sole relief requested from the Appellate Division was specific performance–namely, to have the trial court impose the originally-promised sentence of 5 years. Neither at sentencing nor on direct appeal did Bomasuto seek withdrawal of his guilty plea. These circumstances indicate to the Court that the sole relief sought by Bomasuto through this petition for habeas corpus is specific performance of the trial court's original sentence promise rather than reversal of the conviction itself. Because Bomasuto has completed his sentence of imprisonment, it appears that this Court, were it to grant the petition, would be unable to grant Bomasuto any effective relief. Thus, Bomasuto's petition presents a mootness issue which this Court must consider at the outset. *See Lane v. Williams*, 455 U.S. at 630-31.

In *Lane*, the respondents had pleaded guilty in unrelated state-court prosecutions for burglary, an offense punishable at that time by imprisonment for an indeterminate term of years and a mandatory 3-year parole term. *Id.* at 625. Neither defendant, during his plea acceptance hearing, was informed that his negotiated sentence included the mandatory parole term. *Id.* at 625-26 Each completed his prison sentence, was released on parole, and was then reincarcerated for parole violation. *Id.* at 626. While in custody, each filed petitions for federal habeas corpus alleging that the failure of the trial courts to advise them of the mandatory parole requirement

before accepting their guilty pleas deprived them of due process of law. The district court granted habeas relief and, in accordance with the relief requested by them,[3] merely ordered their release through "specific performance" of the plea bargains rather than nullifying the guilty pleas and allowing them to plead anew. *Id.* at 627, 628.

The circuit court of appeals reversed based on a question as to exhaustion of state remedies. Before reaching that decision, however, the circuit court concluded that the cases were not moot, noting that one defendant's mandatory parole term extended beyond the date of its decision and thus could be reinstated. With regard to the defendant whose parole term had expired, the circuit court concluded that the controversy was still alive because there remained collateral consequences which might have lingering effects since the defendant was found guilty of a violation of the mandatory parole, and that violation would remain upon his record with possible adverse consequences. *Id.* at 629. Following the remand, the district court ultimately again entered judgment for respondents. Since the prisoners had already been discharged from custody, the district court simply entered an order "declaring void the mandatory parole term[s]." The circuit court of appeals affirmed, and the Supreme Court granted certiorari to consider whether the failure of the trial court to advise respondents of that mandatory parole requirement before accepting their guilty pleas deprived them of due process of law. *Id.* at 626. The Supreme Court determined that it was unable to reach the merits of because it found that the claims for relief were moot.

---

[3] Williams' petition did not ask the federal court to set aside his conviction and allow him to plead anew but instead requested an order "freeing him from the present control" of the prison and from "all future liability" under his original sentence. *Lane v. Williams*, 455 U.S. at 627 (quotation omitted). The petition also requested "[a]ny further relief that [the] Court deems appropriate and just in this [m]atter." *Id.* (quotation omitted). The habeas petition filed by the other respondent in *Lane v. Williams* sought his "immediate release." *Id.* at 628 (quotation omitted).

As an initial matter, the Supreme Court in *Lane v. Williams* assumed, for the sake of argument, that the trial court's failure to advise defendants of a consequence of their plea (in that case, a mandatory parole term) rendered their guilty pleas void, defendants could seek to remedy this error in two quite different ways[,]" namely, by "ask the District Court to set aside their convictions and give them an opportunity to plead anew; in that event, they might either plead not guilty and stand trial or they might try to negotiate a different plea bargain properly[,]" or they "could seek relief in the nature of 'specific enforcement' of the plea agreement as they understood it; in that event, the elimination of the mandatory parole term from their sentences would remove any possible harmful consequence from the trial court's incomplete advice." 455 U.S. at 630 & n.9 (citations omitted).

Had the defendants in *Lane v. Williams* "sought the opportunity to plead anew, th[e] case would not be moot," the Supreme Court explained, because "[s]uch relief would free respondents from all consequences flowing from their convictions, as well as subject them to reconviction with a possibly greater sentence," leaving a "live controversy" to determine–that is, whether a constitutional violation in fact had occurred and whether defendants were entitled to the relief that they sought. *Id.* at 630-31 (citation omitted). In other words, even if the previous sentence had been served and the State indicated that it would not seek a retrial, the case would not be moot provided that defendants sought redress from the court in the form of requesting the opportunity to plead anew. The Supreme Court explained that were the defendants successful in overturning or vacating the conviction, they would be relieved from collateral consequences in addition to the direct consequences (i.e., incarceration) of the criminal conviction, thereby avoiding the mootness problem. *Id.* (citing *North Carolina v. Rice*, 404 U.S. 244, 248 (1971)

(*per curiam*) .

However, the defendants in *Lane v. Williams* elected only to attack their sentences, and since those sentences expired during the course of these proceedings, th[e] case [was] moot." *Id.* at 631. The Supreme Court observed that one defendant's "general prayer for '[a]ny further relief that [the] Court deems appropriate and just in this [m]atter'–or the fact that the District Court may have inherent power to fashion an appropriate remedy for the violation of a constitutional right–[wa]s not equivalent to a specific request by [defendants] to set aside their convictions." *Lane*, 455 U.S. at 631 n.11. The Supreme Court expressly did not decide whether defendants in *Lane* "would ever be entitled to relief other than the opportunity to plead anew," noting that "[u]nless [defendants] requested such relief, however, it surely would not be appropriate to enter an order that would subject them to the risk of retrial after their sentences had been served." Similarly, Bomasuto here has not included a specific prayer for relief on the form habeas petition that he filed. And, the pre-printed language of the form petition, above the signature line, simply states, "Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding." Petition at 10 (Docket No. 1); also submitted as Resp't Ex. K. Based on the Supreme Court's discussion in *Lane*, 455 U.S. at 631 n.11, that language should not be considered tantamount to a specific request by petition Bomasuto to set aside his conviction. Like the defendants in *Lane*, Bomasuto has not sought, and does not "seek the opportunity to plead anew," 455 U.S. at 631, but rather "sought to remedy the alleged constitutional violation by removing the consequence that gave rise to the constitutional harm[,]" *id.*, and "[i]n the course of [his] attack, that consequence expired of its own accord[,]" *id.*

Because Bomasuto does not challenge his conviction, this is not a situation where the

presumption of collateral consequences, articulated in *Sibron* and *Lane*, applies. *United States v. Mercurris*, 192 F.3d at 293 ("Mercurris acknowledges that he cannot rely upon the presumption of collateral consequences arising from a criminal conviction because he does not challenge his conviction–he contests only a sentencing enhancement. Nevertheless, Mercurris urges us to presume the existence of collateral consequences sufficient to satisfy Article III's case-or-controversy requirement. We decline to do so."); *accord Gomez-Vargas v. United States*, No. 07 CIV. 1864 HB, 2009 WL 1024241, at *2 (S.D.N.Y. Apr. 15, 2009) ("Here, in addressing Petitioner's challenge solely to the length of his sentence, the Court is foreclosed from presuming such collateral consequences. *See*, *e.g.*, *Smith v. United States*, No. 05-CV-1243 (NGG), 2008 WL 2795929, at *2 (E.D.N.Y. July 18, 2008). That is, collateral consequences that may be presumed when a conviction is challenged may not be presumed where a petitioner challenges the length of his sentence, which has already been served, because comparable civil disabilities generally do not arise from the length of a sentence. *Mercurris*, 192 F.3d at 293-94. Petitioner's challenge to the length of his completed sentence will therefore only satisfy the constitutional case-or-controversy requirement if Petitioner can demonstrate that prevailing on his motion will relieve him 'of some concrete and identifiable collateral effect of that sentence.'" *United States v. Hamdi*, 432 F.3d 115, 118 (2d Cir.2005); *see also Mercurris*, 192 F.3d at 294. Here, Petitioner has made no such showing, and a review of the record reveals none.").

Furthermore, even if Bomasuto's petition were to be interpreted to challenge the length of his supervised release in addition to imprisonment, that challenge likewise is moot. Here, Bomasuto was adjudicated as a *second* felony offender and sentenced to a determinate term of imprisonment. The applicable statutory section regarding post-release supervision is Section

70.45(2) of New York's Penal Law. Section 70.45(2) provides that the post-release supervision period for a determinate sentence *shall* be five years, although in the case of a *first time* felony offender, a sentencing court may specify a shorter period of post release supervision of not less than two and a half years upon a conviction of a class B or class C violent felony. N.Y. PENAL LAW § 70.45(2)(f) ("The period of post-release supervision for a determinate sentence, other than a determinate sentence imposed for a felony sex offense as defined in paragraph (a) of subdivision one of section 70.80 of this article, shall be five years except that . . . (f) such period shall be not less than two and one-half years nor more than five years whenever a determinate sentence of imprisonment is imposed pursuant to subdivision three of section 70.02 of this article upon a conviction of a class B or class C violent felony offense."); *accord*, *e.g.*, *People v. Ryan*, 13 Misc.3d 451, 453, 822 N.Y.S.2d 856, 858 (N.Y. Sup. Ct. 2006).

Because Bomasuto was adjudicated as a *second* felony offender, the sentencing court was obligated to impose the maximum post-release supervision period of five years. *See* N.Y. Penal Law § 70.45(2); *People v Ryan*, 13 Misc.3d at 453. Thus, even if this Court were to order Bomasuto re-sentenced, the state trial court would be unable to impose a lesser term of supervised release than that already imposed. *See Gomez-Vargas*, 2009 WL 1024241, at *3 (holding that even if petition under 28 U.S.C. § 2255 were to be interpreted as challenging length of petitioner's term supervised release in addition to the prison term, petition was moot because "[p]etitioner was sentenced to the statutory minimum of two years of supervised release based on his conviction for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h)" and "even if the Court were to re-sentence Petitioner, it would be unable to impose a lesser term of supervised release than that already imposed") (citing *United States v. Williams*,

475 F.3d 468, 479 (2d Cir. 2007) (finding that defendant's appeal was rendered moot upon his release from prisoner because even if the case were remanded, there was no possibility that the district court could impose a reduced term of supervised release; defendant had initially been sentenced to the minimum period of supervised release permitted by statute and district court could not impose lesser term).

Finally, it does not appear that redress is available through the early termination of Bomasuto's period of supervised release, even if the habeas petition were granted. This is "the controlling statute on post-release supervision, N.Y. Penal Law § 70.45, does not appear to reduce the length of a supervised release term because of unlawful excess time served in prison." *Brown v. Breslin*, No. 04 Civ. 7970(PAC)(DF)2008 WL 857767, at *16 n. 18 (S.D.N.Y. Mar. 31, 2008).

## IV. Conclusion

For the reasons stated above, petitioner Angelo R. Bomasuto's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 presents no live case or controversy to be resolved by the Court, and is therefore dismissed as moot. Bomasuto has not made a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). Accordingly, I decline to issue a certificate of appealability. *See*, *e.g.*, *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

**IT IS SO ORDERED**

/s/ Victor E. Bianchini

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:	January 19, 2010
	Rochester, New York.